**STATE of Missouri, Respondent,**

**v.**

**Gerald Henry COOK, Appellant.**

**No. 53909.**

Supreme Court of Missouri,
Division No. 1.

April 14, 1969.

Norman H. Anderson, Atty. Gen., John C. Klaffenbach, Asst. Atty. Gen., Jefferson City, for respondent.

Richard C. Hart, St. Louis, for appellant.

HIGGINS, Commissioner.

Appeal from denial of Motion to Vacate Judgment and Sentence. Criminal Rule 27.26, V.A.M.R.

Appellant went to trial April 11, 1966, and, on April 13, 1966, was convicted by a jury of forcible rape. The court assessed his punishment at 15 years' imprisonment in custody of the Department of Corrections. Sentence and judgment were rendered accordingly, Sections 559.260 and 556.280, V.A.M.S., and the judgment was affirmed, State v. Cook, Mo., 412 S.W.2d 441. Appellant is confined in the Missouri state penitentiary.

Appellant's motion was filed February 18, 1968; he was accorded an evidentiary hearing April 17, 1968; and the court filed findings of fact, conclusions of law, and judgment overruling the motion May 3, 1968.

On June 13, 1965, appellant, together with Frank Downey and Ronald Brower, was arrested and all three were charged with forcible rape of Jenny Savisky, a 22-year-old blind woman. Downey and Brower pleaded guilty to the rape and were sentenced to 3-years' imprisonment.

Appellant testified at the evidentiary hearing on his motion. According to him, he was taken to a St. Louis police station following his arrest, and he made several requests for the right to contact an attorney during his first forty-five minutes at the station. His requests were refused and he was taken to an interrogation room where Jenny Savisky was seated with three uniformed policemen and her mother and sister. Three other policemen were in the room. One officer told appellant to state his name, address, and the name "Jenny," after which followed whispered conversation between an officer and the prosecutrix.

On April 9, 1966, appellant discharged his appointed lawyer, Mr. Barnard, and his employed lawyer, Mr. O'Hanlon, entered his appearance. The case was tried beginning April 11, 1966, by Mr. O'Hanlon. Appellant wished during the trial to have Frank Downey and Ronald Brower brought from the penitentiary to testify in his defense. According to him, the court refused this request on the ground the state was then presenting its case. He acknowledges that Mr. O'Hanlon advised against using the testimony of these witnesses.

Appellant's motion refers to a number of instances in which the trial court interrogated witnesses and made comments in connection with his trial rulings.

Appellant also refers to the court's impressions in connection with the sentence imposed.

The trial transcript was also available as evidence at the hearing.

This appeal is briefed by both appointed counsel and appellant *pro se.*

As briefed by counsel, appellant's points 1 and 2 charge the court with an abuse of discretion in failing to disqualify for the 27.26 hearing on grounds of bias and prejudice, and with error in finding that the sentence imposed was not "vindictive and vengeful." Counsel refers to colloquy in chambers following trial and at the time of sentencing where the court indicated its feeling that a sentence longer than the 15 years assessed following the verdict might be considered except for the short sentences the codefendants received on their guilty pleas. The court also mentioned his doubts on the credibility of appellant. The argument is that these observations indicated an existing impossibility of a fair hearing on the motion calling for the court's self-disqualification. Urged particularly is the court's refusal to believe appellant's asserted requests for counsel upon his arrest.

Suffice to say that Criminal Rule 27.26, V.A.M.R., requires that the motion to vacate a sentence be filed "in the court which imposed such sentence." Therefore, in this case, the matter necessarily came before Judge Aronson and, there being no showing that Judge Aronson had an interest in the case suggesting his self-disqualification, he remained in the case absent disqualification under the applicable rule. Civil Rule 51.06, V.A.M.R.

■ With respect to the alleged excessive punishment, suffice to say that it is within that prescribed by Section 559.260, supra, and there can be no complaint of excessive punishment when it is within limits imposed by law. State v. Garton, Mo., 396 S.W.2d 581, 582 [3].

■ Under counsel's point 3 and appellant's point A, it is contended that appellant was deprived of his right against self-incrimination when, upon his arrest, he was asked to and did speak his name, address, and the name "Jenny" in the presence of Jenny and police officers, after which Jenny identified appellant as one of her assailants. This contention is answered by, and is denied under United States v. Wade, 388 U.S. 218, 222–223, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149: "* * * compelling (the suspect) to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the (suspect), was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt. * * * the distinction to be drawn under the Fifth Amendment * * * is one between an accused's 'communications' in whatever form, vocal or physical, and 'compulsion which makes a suspect or accused the source of "real or physical evidence."' * * * 'both federal and state courts have usually held that * * * [the privilege] offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.' * * * None of these activities becomes testimonial within the scope of the privilege because required of the accused in a pretrial lineup."

■ Appellant urges also under this point as otherwise held in United States v. Wade, supra, that the court should have excluded any evidence of this identification at trial because the "lineup" was conducted without counsel for the suspect present. The difficulty with this contention is that Stovall v. Denno, 388 U.S. 293, 296, 87 S.Ct. 1967, 18 L.Ed.2d 1199, specifically holds that the exclusionary rules of United States v. Wade, supra, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178, affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after June 12, 1967. State v. Merridith, Mo., 433 S.W.2d 578, 579 [1]; State v. Moore, Mo., 435 S.W. 2d 8, 12–13 [7]. Cook's lineup identification took place June 13, 1965, and he was

convicted April 13, 1966. Perhaps in recognition of the inapplicability of the requirement of counsel at a lineup of United States v. Wade, supra, counsel and appellant present arguments which raise the question whether appellant "is entitled to relief on his claim that in any event the confrontation * * * was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. * * * a recognized ground of attack upon a conviction independent of any right to counsel claim. Palmer v. Peyton, 359 F.2d 199 (C.A. 4th Cir. 1966)." Stovall v. Denno, supra, 388 U.S. 293, 1. c. 301, 87 S.Ct. 1. c. 1972. This question involves ascertainment of the "totality of circumstances." State v. Blevins, Mo., 421 S.W.2d 263, 267 [2].

■ The totality of circumstances surrounding the victim's identification of appellant as one of her assailants contains more than the evidence previously stated. Officer Nugent testified that not only appellant, but also Brower, Downey, and a fourth man, Lester Greer, stood in the presence of Jenny and gave name, address, and spoke "Jenny." This provided some basis for voice comparisons, State v. Moore, supra, 435 S.W.2d 1. c. 13 [9], the absence of which was condemned in Palmer v. Peyton, supra. The victim, prior to the assault, had been with her sisters where several men were talking to them. This group of men included the victim's assailants, and she heard their voices several times. She knew the sequence in which they later assaulted her and she was able accurately to describe and distinguish them by height. The sisters who had sight placed appellant and the others at the scene of the crime and the mother saw appellant emerge from the scene after the commission of the crime. One of the sisters was taken from the scene by these same men and Cook said to her that she "was the next one to get raped." This "totality of circumstances" is not demonstrative of an unfair trial. Stovall v. Denno, supra, 388 U.S. 1. c. 301–302, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Simmons v.

United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247; State v. Keeney, Mo., 425 S.W.2d 85, 90 [7]; State v. Reeder, Mo., 436 S.W.2d 629.

Counsel complains in point 4 that the court erred in not finding that its comments, suggestions, and explanations during trial were prejudicial to appellant, thereby denying him a fair trial. Counsel contends that the mere numerical total (109) of such interjections is of itself detrimental. Counsel complains specifically of a number of propositions put to witnesses by defense counsel in the form of statements using an inflection of the voice to suggest interrogation and to which the court on each occasion observed accurately that such were not questions. He complains also of questioning by the court and the court's direction to defense counsel upon objection by the prosecution not to refer to the grown men involved in the rape as "boys."

■ The court was, perhaps, technical and obvious in its supervision of this trial, but the suggested matters do not demonstrate an unfair trial. The conduct of this court was well within the rule of State v. Grant, Mo., 394 S.W.2d 285, 287–288 [1–5]: "One of the well-recognized powers of the judicial function is the right and duty of the trial judge to propound additional questions to witnesses in order to develop the truth more fully and to clarify the testimony given. State v. James, Mo., 321 S.W. 2d 698, 704 [2]; City of St. Louis v. Hellscher, 295 Mo. 293, 242 S.W. 652, 653 [4]. In the absence of a showing that the trial judge's interrogation constituted an abuse of discretion and thereby deprived the defendant of a fair trial, prejudicial error has not been demonstrated. State v. Ross, Mo., 371 S.W.2d 224, 228 [6]; State v. Brotherton, Mo., 266 S.W.2d 712, 716–717 [7]; Woodring v. United States, 8 Cir., 311 F.2d 417, 420 [1–2], cert. den. 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414. The defendant cites and relies on State v. Jones, Mo., 197 S.W. 156, and State v. James, Mo., 321

S.W.2d 698. The rules in these cases are in harmony with those above stated, but they were aggravated cases and are not controlling on the facts of the case before us."

Counsel's point 5 (not briefed) and appellant's point B is that the court erred in finding that appellant was not deprived of his right to a fair and impartial trial by the court's failure to provide him with compulsory process of law. Appellant argues that the court "sided" with his lawyer in a disagreement between him and his lawyer regarding the subpoenaing of the codefendants from the penitentiary to testify in his behalf resulting in his acquiescing in such tactic under protest. Appellant cites a number of federal authorities on his right to legal process to secure witnesses, e. g. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019; Keener v. Tennessee, D.C., 281 F.Supp. 964, which are not in point because the record affirmatively shows that appellant was not deprived of such process. (This, no doubt, explains the absence of brief and argument on the point from counsel.)

■ The circumstances were that appellant notified his previous attorney, appointed counsel Mr. Barnard, that he wished the codefendants brought to the court from the penitentiary and Mr. Barnard filed such request. Before the issuance of the necessary process Mr. O'Hanlon was hired to defend appellant and Mr. Barnard was relieved. Mr. O'Hanlon never pursued the subpoena of the witnesses. Near the conclusion of the state's case appellant and counsel had some disagreement concerning the subpoenaing of the codefendants. Despite appellant's wish to have them, Mr. O'Hanlon's judgment was that such testimony could only be harmful to his client. Appellant announced his submission "under protest" to his lawyer's advice. Mr. O'Hanlon knew the proposed witnesses because he had represented them in their defenses and pleas. In addition, the overriding circumstance which answers the charge against the court is that during all the colloquy on this matter between appel-

lant, counsel, and court, the court stated to appellant, "I said to you before that all the processes of the court will be made available to you * * *." No refusal of process for witnesses is shown. Compulsory process was available and trial counsel exercised his judgment not to use the codefendants as witnesses. Such circumstances do not require a retrial solely to permit appellant or counsel to experiment with trial strategy different from that which failed to produce an acquittal. State v. Moore, supra, 435 S.W.2d l. c. 15 [13].

Appellant in his point C charges the court erred in receiving a medical report in evidence without a showing that the "drafter of that report was not within the jurisdiction of the subpoena or otherwise unavailable for purposes of defense cross-examination."

■ The hospital record in question was that of St. Louis City Hospital No. 1, and it concerned an examination made of Jenny Savisky the night of her rape. It was identified by James Sayles, an employee of the hospital in charge of the record. It had been made by a Dr. Edelman who was no longer with the hospital. Portions of it were read in evidence by a Dr. Mulligan in lieu of Dr. Edelman, and Dr. Mulligan's testimony was otherwise limited to meanings of medical language in the report. Appellant does not complain of Dr. Mulligan's late endorsement as a witness nor of his testimony, and no such objection was made at trial. His point is thus limited to his alleged denial of right of cross-examination of a hospital record, which is without merit because, in Missouri, hospital records constitute an exception to the hearsay evidence rule and generally do not violate, in criminal prosecutions, an accused's constitutional right of confrontation and cross-examination absent a showing that the admitted portions of the record constituted substantive probative evidence that appellant committed the rape mentioned in the record. State v. Durham, Mo., 418 S.W.2d 23, 30–31 [19–21]. Appellant's citations of Pointer v. Texas, 380 U.S. 400,

85 S.Ct. 1065, 13 L.Ed.2d 923; Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934; Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255, are not in point because they involved cases where witnesses' testimony from an out-of-court source was used at trial and such witnesses were not available for cross-examination.

Appellant's point D is a charge of ineffective assistance of counsel. His complaints are that Mr. O'Hanlon, his privately retained attorney, did not have adequate time to investigate, prepare and confer, especially with regard to his codefendants; that he had not examined the medical report; that he did not investigate the reputation of the prosecution witnesses; that he submitted to the influence of the court in respect to calling as witnesses the codefendants. Some of these matters have been discussed. In addition, it is noted that Mr. O'Hanlon had a familiarity with the case gained through his representation of the codefendants long before his employment by appellant. This also provided counsel with a sound background for rejecting them as witnesses for the defense and provided a familiarity with the prosecution witnesses. There is no showing that counsel needed more time to prepare and the record demonstrates that counsel conducted the defense in a recognized manner. Under such circumstances the standards suggested by appellant's citations, Coles v. Peyton, 4 Cir., 389 F.2d 224; Lunce v. Overlade, 7 Cir., 244 F.2d 108, 74 A.L.R.2d 1384; Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314; Webb v. Peyton, 4 Cir., 345 F.2d 521; Poe v. United States, D.C.Cir., 233 F.Supp. 173, were not violated. A complete answer to appellant's contention appears in State v. Worley, Mo., 371 S.W.2d 221, 223–224 [7]: "* * * we will assume (which we certainly do not find as a fact) that he may have adopted what later appeared to be unwise strategy in some respects. Such, however, would not be sufficient grounds for setting aside the conviction. This court 'has consistently followed the rule that "negligence or want of skill of counsel affords no ground for the reversal of even a criminal case [State v. Dreher, 137 Mo. 11, 23, 38 S.W. 567, 569; State v. Selvaggi, 319 Mo. 40, 45, 2 S.W.2d 765, 767]." State v. Mason, 339 Mo. 874, 98 S.W.2d 574, 577.' State v. Childers, supra, 328 S.W.2d 45. In cases under the federal statute (28 U.S.C.A. § 2255), which is similar to Rule 27.26, the courts have adopted the rule that 'Lack of effective assistance of counsel in the trial of a criminal case constitutes impingement upon a constitutional right of the accused and lays the judgment and sentence open to collateral attack by motion under the statute. But the constitutional right to the effective assistance of counsel does not vest in the accused the right to the services of an attorney who meets any specified aptitude test in point of professional skill. And common mistakes of judgment on the part of counsel, common mistakes of strategy, common mistakes of trial tactics, or common errors of policy in the course of a criminal case do not constitute grounds for collateral attack upon the judgment and sentence by motion under the statute. It is instances in which resulting from the substandard level of the services of the attorney the trial becomes mockery and farcical that the judgment is open to collateral attack on the ground that the accused was deprived of his constitutional right to effective assistance of counsel.' "

Finally, E, appellant contends he did not have a full and fair evidentiary hearing on the question of ineffective assistance of counsel "for the conglomerated reasons heretofore set out in assignment of errors A, B, C, and particularly, D." All of these have been answered separately above and need not be discussed again.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.