STATE of Missouri, Respondent,

v.

Leevert AIKENS, Appellant.

No. 56928.

Supreme Court of Missouri, Division No. 2.

April 8, 1974.

John C. Danforth, Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Alfred I. Harris, St. Louis, for appellant.

HOUSER, Commissioner.

Leevert Aikens, charged with and convicted by a jury of robbery in the first degree and sentenced to 8 years' imprisonment, has appealed. We have jurisdiction since the notice of appeal was filed prior to January 1, 1972.

Appellant's first point is that the State failed to meet its burden of proving beyond a reasonable doubt that defendant was guilty of the crime charged. There was evidence from which the jury could find these facts: At 6:15 p. m. on March 20, 1970 Mary D——, a 19-year-old married woman, was accosted by two men, defendant and another shorter man, while walking along a public sidewalk in the City of St. Louis. They were strangers. Defendant commenced a conversation with her. The shorter man, approaching from behind, grabbed her, twisted her arm behind her back in a hammerlock, threw his hand over her mouth, pushed her down an alley into a garage, where he asked the victim how much money she had. She told him $35 and some change. The shorter man took the pocketbook against her will and handed it to defendant, who "went in" the pocketbook, "got" the wallet, took money out, went through the rest of the contents of the pocketbook, and threw the pocketbook down on the ground. Defendant confirmed the amount ($35) to the shorter man. The victim was put in fear of her life by defendant's statement that he had been in the penitentiary for killing a girl. She remained in fear of her life throughout the course of the evening. Defendant took the victim's wedding and engagement rings off her finger, and her wristwatch off her arm. She was "frightened"; "scared"; was weeping. Defendant left the victim in the garage with the shorter man while defendant went to a store to purchase liquor. He was gone for 30 minutes, during which time the shorter man threatened to kill the victim if she did not "co-operate." The victim was held in the garage for five hours under physical restraint. During that time a third man came to the garage. At the trial the court was informed, out of the hearing of the jury, that the prosecutrix had been admonished by the prosecutor not to refer to the subject of rape or sexual intercourse in her testimony. Interrogation of prosecutrix was so conducted as to avoid that subject. When the victim was finally allowed to leave the garage defendant accompanied her, holding her by the arm. As they were walking through the alley two policemen who happened by observed a "struggle" or "tug of war" between defendant and the girl. The officers approached to investigate. Defendant broke and ran. After an extended pursuit the officers apprehended defendant and brought him back to the place in the alley where the chase began. The victim identified defendant in his presence and related to the officers what had happened. At the trial prosecutrix

positively identified defendant. There was no question or doubt in her mind that defendant was the taller of the two men who robbed her. She testified that during the five hours in his presence she heard his voice; that she observed him; that his face was right in front of her face, nose to nose, within two inches; that he lit a cigarette at one time, revealing his features. The alley was lighted by big vapor-type street lights. In the alley she saw defendant "good". She also identified photographs of the garage and automobile therein in which she sat from time to time during the evening. The victim's rings were found on the floor of the back seat of the automobile. Her pocketbook and some of its contents (other than the money) were found in the garage.

■ There is no merit in appellant's conclusory and unsupported statements that the charge "is congenitally devoid of evidence or proof"; that there is a failure of proof as a matter of law; that there is no prima facie case; that the facts and evidence do not support the charge. The foregoing evidence is amply sufficient to establish every constituent element of robbery in the first degree and to meet the State's burden of proof beyond a reasonable doubt.

Appellant's second point is that his constitutional rights were violated because of the manner and means of selecting the jury; that negroes were systematically excluded "from serving as jurors in cases where the defendants were negroes as here." Appellant states in his brief that the convicting jury was all-white; that his counsel objected to the manner in which the jury was selected "in that Negroes were refused selection to the jury only because of their color"; that the Supreme Court "can best judge the condition of the composition of the juries in St. Louis County and how pure white they are in cases of Negro defendants, by the number of complaints it receives from the area to the effect that Negroes were excluded from the jury"; that this Court on its own

motion "ought and should request its clerical staff to tabulate the appeals filed from St. Louis City wherein the defendant is identified as a Negro or a Black person, and see if there·is not a complaint that the trial was to an all white jury, and that Negroes are systematically prevented from serving on the petit trial juries when the defendant is Black."

■ This point is wholly without merit, and in view of the fact that the record in the trial court is devoid of any reference to the subject the point borders on the frivolous. These statements rest entirely upon the unsupported statements of counsel. Bare assertions of counsel do not prove themselves. State v. Dowe, 432 S.W.2d 272 [5, 6] (Mo.1968). Appellant did not file a motion to quash the venire; did not object to the empaneling of the jury on this ground; did not object to being forced to trial before an improperly selected venire; did not mention the subject in the motion for new trial; did not introduce any evidence of systematic exclusion at the hearing on the motion for new trial, and so far as this record indicates did not present the question to the trial court at any time, formally or informally. The burden is not on this Court to collect and assemble statistics on this subject. Appellant refers to past practices in St. Louis County and City. Even if past practices had been shown by substantial evidence to be as appellant claims, " * * * past practices will not make a prima facie case, unsupported by evidence that systematic exclusion was practiced *in the composition of the particular panel from which the convicting jury was chosen.*" (Our italics.) State v. Strawther, 476 S.W.2d 576, 578 [1] (Mo.1972). As stated in State v. Brownridge, 459 S.W.2d 317, 318 (Mo. 1970): "Only if he was deprived by design of the chance of having Negroes on the jury would appellant's constitutional rights have been invaded. State v. Mooring, Mo.Sup., 445 S.W.2d 303, 305 [2]. The burden of establishing discrimination is on the defendant. State v. Merridith, Mo.

Sup., 433 S.W.2d 578, 579 [2]. There is nothing in this record to show how the venire was selected. The suggestion of systematic exclusion was never raised in the trial court by motion to quash the venire, oral objection to proceeding to trial, in the motion for new trial, or otherwise. No evidence was offered to demonstrate unlawful composition of the panel based upon systematic exclusion. The point therefore has not been preserved for appellate review."

■ Finally, appellant makes the point that Instruction No. 7 on the burden of proof was erroneous in the use of the language " * * * but a doubt to authorize an acquittal on that ground ought to be a substantial doubt touching the defendant's guilt and not a mere possibility of defendant's innocence"; that the instruction thereby diluted appellant's Fourteenth Amendment rights to the presumption of innocence and to be proven guilty beyond a reasonable doubt; that a similar, if not identical, instruction was held to be reversible error in State v. Davis, 482 S.W.2d 486 (Mo.1972). Examination of the Davis case reveals that while the point was raised and although the instructions in the two cases are identical, the point was ruled adversely to appellant's contention. The court in the Davis case said, 482 S.W.2d l.c. 489 [9]: "This complaint has been frequently raised and found not meritorious. See State v. Edwards, Mo.Sup., 435 S.W.2d 1, 7 [11]. The only authority cited by appellant in support of his contention, State v. Miller, 190 Mo. 449, 89 S.W. 377, does not discuss this proposition and provides no reason for the acceptance here of this consistently rejected objection."

Judgment affirmed.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the Court.

All of the Judges concur.