Eddie Joe CONLEY, Petitioner,

v.

Carl WHITE, Superintendent, Missouri
Training Center for Men, Respondent.

No. 78 0239 CV W 4.

United States District Court,
W. D. Missouri, W. D.

Memorandum and Order April 26, 1979.

On Motion for Reconsideration
May 31, 1979.

Eddie Joe Conley, pro se.

Philip M. Koppe, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

ELMO B. HUNTER, District Judge.

One issue remains for consideration in this action under 28 U.S.C. § 2254: was petitioner denied a jury that fairly represented a cross-section of the community because women were automatically excluded from the jury on request?

Petitioner was charged by information with first degree robbery on January 20, 1975. Trial began on April 2, 1975, in the Circuit Court of Jackson County, Missouri, in Kansas City. A venire of forty-two persons, of whom eight or 19.04% were women, appeared for trial. *Tr.*, 14–15. The Court impaneled a jury of twelve men. *Tr.*, 44. During the selection process, the following proceedings occurred:

MR. MERRITT (Defense Counsel): I would like to address one more question

to the panel or in the alternative, I'd like the Court to take judicial notice of the fact that the law, the present law in Missouri, allows the excusing of a woman on request simply because she is a woman.

MR. SCHRADER (Prosecutor): Say that again?

MR. MERRITT: I would like to ask the ladies present if they were allowed to be excused if they requested, or I'd like the Court to take judicial notice of the present law of Missouri which states that women may be excused from jury service for—because of the fact that they are women.

MR. SCHRADER: That's always been the law.

THE COURT: Well, we will take judicial notice that such is the law, that a female summoned for jury service may, upon her own request, be excused.

MR. MERRITT: In that event, I ask the Court to dismiss the jury—the jury panel and order a new panel that is selected from the community irrespective of sex. I believe that the defendant would be denied due process by the present method of selecting the panel.

THE COURT: The request is denied.

MR. MERRITT: Thank you, sir.

*Tr.,* 41–42.

In his motion for new trial, petitioner made the following claim of error:

1. A panel of 34 qualified voters was available for consideration. The defendant objected to the panel on the basis that it did not represent a cross section of the citizenry. Because of the Missouri Law which allowed the female citizens to be excused from jury duty only because of their gender, deprived the Defendant of a representative venire from which the jurors were chosen.

*Tr.,* 196–97. The motion was overruled.[1]

On appeal, petitioner presented his fair cross-section claim in the following form:

"The court erred in not granting [petitioner's] motion to quash the venire because of the systematic exclusion of females from the panel. The operation of Article I, section 22(b) of the Missouri Constitution violates the [petitioner's] right to due process as guaranteed to him by the XIV Amendment to the United States Constitution." In support of this claim, petitioner cited *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), and *Hoyt v. Florida,* 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). He argued that the Missouri law giving women the right to be excused automatically from jury service upon request was an "automatic exemption based solely upon sex" and therefore facially unconstitutional under *Taylor* and *Hoyt.* The Missouri Court of Appeals summarily rejected the claim "for the reason that [petitioner] did not sustain his burden of proof in showing that a jury is not composed of a fair cross section of the community. . . . Here, there was a mere oral assertion with no offer of proof; and that is a patently insufficient basis for his claim." *State v. Conley,* 541 S.W.2d 4, 6 (Mo.App.1976). Petitioner then filed motions under Missouri Rules 83.02 and 83.03, without success, but he did not file a postconviction attack under Rule 27.26. No Rule 27.26 motion has been filed since this action was filed.

On January 9, 1979, the United States Supreme Court decided *Duren v. Missouri,* —— U.S. ——, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). *Duren* squarely held that Missouri's "excuse on request" provision for women violated the fair cross-section clause of the Sixth Amendment of the United States Constitution. In a series of cases beginning with *Lee v. Missouri,* —— U.S. ——, 99 S.Ct. 710, 58 L.Ed.2d 736 (1979), the Supreme Court held that *Duren* was to be applied retroactively to juries sworn after the date of decision in *Taylor v. Louisiana, supra. Taylor* was decided on January 21, 1975, some four months before petitioner's jury was sworn. *Lee* also stated:

1. The discrepancy between the number of persons appearing in the venire as reflected by the transcript and the number of persons cited by petitioner as appearing cannot be explained from material before the Court. In view of the decision reached on this claim, however, it is not necessary to resolve the discrepancy.

We note that in any case in which a jury was sworn subsequent to *Taylor v. Louisiana* and the fair-cross-section claimed based on exclusion of women was rejected on direct review or in state collateral proceedings because of the defendant's failure to assert the claim in timely fashion, relief is unavailable under 28 U.S.C. § 2254 unless the petitioner can show cause for having failed to raise his claim properly in the state courts. See *Wainwright v. Sykes*, 433 U.S. 72 [97 S.Ct. 2497, 53 L.Ed.2d 594] (1977).

*Lee v. Missouri*, —— U.S. —— ·—, ——, 99 S.Ct. 710, 711, 58 L.Ed.2d 736 (1979).

■ As the foregoing passage implies, the usual rules regarding exhaustion of state remedies in an action under 28 U.S.C. § 2254 apply when a Missouri prisoner raises a claim under *Duren*. Respondent argues that petitioner has not exhausted state remedies on his *Duren* claim and that it must therefore be dismissed. In response, petitioner argues that he has not waived his right to present this claim in a federal habeas corpus petition.

■ It is axiomatic that a state prisoner seeking federal habeas corpus relief must first exhaust state remedies by giving state appellate courts a fair opportunity to rule upon the claims presented in the federal petition. *See, e. g., Pitchess v. Davis*, 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1975); *Tyler v. Swenson*, 527 F.2d 877 (8th Cir. 1976). The exhaustion doctrine

reflects a policy of federal-state comity, . . . "an accommodation of our federal system designed to give the state the initial 'opportunity to pass upon and correct' alleged violations of its prisoners' rights." *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971).

*Picard v. Connor, supra*, 404 U.S. at 275, 92 S.Ct. 509, 512. *See also Younger v. Harris*, 401 U.S. 37, 41, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The doctrine reflects the practical necessity of preventing "unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution. . . ." *Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 740, 29 L.Ed. 868 (1886). See also *Picard v. Connor, supra*, 404 U.S. at 275, 92 S.Ct. 509. *Tyler v. Swenson*, 527 F.2d 877, 880 (8th Cir. 1976), states the general principle flowing from these concepts:

The federal courts should entrust the states with primary responsibility in their own criminal cases. . . . When a federal court is unable to determine unequivocally that an issue has been ruled upon by the state courts, comity requires that the initial determination of the issue be made by the state courts.

■■ A second principle follows naturally from general concepts of comity: state appellate courts should not be bypassed in a situation where the Supreme Court decision relied upon by the petitioner was announced after the state appellate courts last considered his case. *Daboul v. Craven*, 429 F.2d 164 (9th Cir. 1970); *Palmer v. Comstock*, 394 F.2d 395 (9th Cir. 1968). The reasons for this rule are simple and clear. The states have the primary responsibility for ensuring that their criminal convictions conform to federal constitutional standards, and this responsibility does not end once the state has completed its initial review of a conviction. Thus, the states have the first responsibility to act upon controlling changes in the law occurring after the first appeal or post-conviction attack by a state prisoner. Missouri recognizes the importance of this principle by permitting changes in controlling law, state or federal, to be advanced in a second or successive petition under Rule 27.26. *Meeks v. State*, 512 S.W.2d 215 (Mo.App.1974).

In this case, petitioner's direct appeal presented only a cursory facial attack upon the constitutionality of Missouri's "excuse on request" provision. Petitioner presented no factual evidence in support of his claim, thereby distinguishing it from the attacks on the provision in *State v. Duren*, 556 S.W.2d 11 (Mo.1977), *State v. Lee*, 556 S.W.2d 25 (Mo.1977), *State v. Minor*, 556 S.W.2d 35 (Mo.1977), *State v. Harlin*, 556

S.W.2d 42 (Mo.1977), and *State v. Davis*, 556 S.W.2d 45 (Mo.1977). As noted by the United States Supreme Court in *Duren*, the statistical evidence presented in *Duren* and its companions, *supra*, was an essential part of the fair cross-section claim. *Duren v. Missouri*, —— U.S. ——, ——, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

■ From the record before the Court, it is apparent that the Missouri appellate courts have not yet had an opportunity to examine petitioner's fair cross-section claim in light of the statistical evidence presented in *Duren, Lee, Minor, Harlin* and *Davis*, or the principles announced by the United States Supreme Court in *Duren*. Under these circumstances, the principles of comity discussed in this opinion compel the Court to hold that petitioner must pursue his fair cross-section claim in the Missouri courts before presenting it here. Petitioner may pursue state relief by filing a motion under Rule 27.26 in the state courts. Such a motion is an adequate and effective form of relief. Petitioner's fair cross-section claim will be dismissed without prejudice pending the outcome of his Rule 27.26 motion and the appeals taken therefrom.

As noted in the Court's order of January 2, 1979, petitioner's claim of improper identification will be denied.

For the reasons stated above, it is

ORDERED that petitioner's fair cross-section claim is dismissed without prejudice pending the exhaustion of state remedies. This action is denied in part and dismissed without prejudice in part.

ON MOTION FOR RECONSIDERATION

Petitioner has filed a motion requesting reconsideration of the Court's order of April 26, 1979, dismissing his claim under *Duren v. Missouri*, —— U.S. ——, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), for failure to exhaust state remedies. In the alternative, petitioner seeks issuance of a certificate of probable cause.

The motion presses two points in support of reconsideration. First, petitioner argues that he is not required to return to the Missouri courts to press his *Duren* claim because the exhaustion doctrine only requires him to give the state courts one full and fair opportunity to reach his claim. Second, petitioner argues that he currently has no available state remedy, thereby making exhaustion futile.

■ It is true, as argued by petitioner, that state prisoners seeking federal habeas corpus relief must give the state courts only one full opportunity to review their claims under most circumstances. It is equally true, however, as the Court noted in its original order in this case, that where federal law has changed after a habeas corpus petitioner last presented his claim to the state courts, the petitioner must return to the state forum, if one is available, so that the state courts may determine the effects of the intervening change on the administration of their criminal justice system. *Donnell v. Nash*, 323 F.2d 850 (8th Cir. 1963); *Mahurin v. Nash*, 321 F.2d 662 (8th Cir. 1963). *Accord, Franklin v. Conway*, 546 F.2d 579 (4th Cir. 1976); *St. Pierre v. Helgemoe*, 545 F.2d 1306 (1st Cir. 1976); *Wood v. Superintendent, Carolina Correctional Facility*, 504 F.2d 1069 (4th Cir. 1974); *Wright v. Maryland Penitentiary, State of Maryland*, 429 F.2d 1101 (4th Cir. 1970); *James v. Copinger*, 428 F.2d 235 (4th Cir. 1970); *Boyer v. City of Orlando*, 402 F.2d 966 (5th Cir. 1968). *Cf. Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1972); *Mucie v. Missouri State Department of Corrections*, 543 F.2d 633, 636 (8th Cir. 1976). This rule is an exception to general principles governing exhaustion, and compels the conclusion that petitioner's first point is without merit.

Nonetheless, petitioner must return to the Missouri courts under the rule cited above only if a forum is available to him there. Records of various state appellate courts show that petitioner may present his *Duren* claim in at least two different ways.

First, it appears that petitioner may present his *Duren* claim in a motion to recall the mandate of the Missouri Court of Appeals. In a similar case, one Anthony McReynolds presented a fair cross section

claim at trial. Despite this presentation, McReynolds' direct appeal was denied by the Missouri Court of Appeals on the basis of *State v. Duren*, 556 S.W.2d 11 (Mo.1977) (en banc), *rev'd*, —— U.S. ——, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Motions under Rules 83.02 and 83.03 were denied. *State v. McReynolds*, 574 S.W.2d 450 (Mo.App.1978). Shortly after the United States Supreme Court's *Duren* ruling, McReynolds filed a motion under Missouri Rule 83.03 in the Missouri Supreme Court to reverse the decision of the Court of Appeals on the basis of the intervening change in federal law. The Supreme Court denied the motion but directed McReynolds to file a motion to recall mandate in the Court of Appeals. He did so, and the Court of Appeals granted relief. *State v. McReynolds*, 581 S.W.2d 465 (Mo. App.1979). Petitioner's situation is indistinguishable from *McReynolds'*, and the avenue of a motion to recall mandate is available to him.

Second, it appears that petitioner may file a motion under Missouri Rule 27.26 raising his *Duren* claim despite his previous attempt to press the claim on direct appeal or in a previous Rule 27.26 motion. *Cf. Sweazea v. State*, 515 S.W.2d 499 (Mo.1974) (en banc). In *State v. Key*, 557 S.W.2d 696 (Mo.App.1977), Gary Dale Key raised a fair cross-section claim identical to that tendered by petitioner. The Missouri Court of Appeals rejected the claim on the basis of its earlier decision on petitioner's appeal, *id.* at 697, and Key did not seek review in the Missouri Supreme Court. After the United States Supreme Court's decision in *Duren*, Key filed a Rule 27.26 motion pressing his *Duren* claim. The Circuit Court of Jackson County, Missouri granted relief and the state appealed on grounds unrelated to the merits of the *Duren* issue. Further, the state did not allege that Key was barred from presenting his *Duren* claim because he had previously attempted to present it or

because he had not adduced evidence on it originally in the Circuit Court or the Court of Appeals, where the case currently pends. *Key v. State*, No. WD 30909 (Mo.App. filed April 30, 1979). It thus appears that petitioner is not foreclosed from presenting his *Duren* claim because he filed a previous similar request for relief.[1]

■ From the foregoing discussion several points are clear. First, Missouri Courts are actively engaged in applying the principles announced in *Duren v. Missouri, supra,* in at least two different types of proceedings in an expeditious manner. Second, from the *Key* decision, it is clear that past procedural defects in pressing fair cross-section claims are not a bar to the relitigation of those claims in light of *Duren*. It therefore appears that exhaustion of state remedies at this time would not be futile. *Smallwood v. Missouri Board of Probation and Parole*, 587 F.2d 369 (8th Cir. 1978); *Eaton v. Wyrick*, 528 F.2d 477 (8th Cir. 1975).

■ Two other points remain for disposition. First, petitioner appears to allege that he need not return to the Missouri courts to exhaust his *Duren* claim because of the substantial delay since he first presented the claim. While it is true that delay in the processing of a state appeal or postconviction attack will permit a federal court to intervene even though state remedies have not technically been exhausted, *see Mucie v. Missouri State Department of Corrections, supra,* 543 F.2d at 636, those conditions do not obtain here. In this case, the delays have not been attributable to the refusal of the state to respond to the petition or the state courts to rule upon it. Instead, much, if not all, of the delay can be attributed to the time necessary to develop the record in this case and the period spent in awaiting the United States Supreme Court's decision in *Duren*; certiorari was

1. In his motion, petitioner again alludes to a previous motion allegedly filed by him or on his behalf under Rule 27.26. In order to determine whether the motion had in fact been filed, the Court directed respondent to make a thorough search of state court records for evidence of such a motion and to submit a copy of the motion and court records compiled in connection with it. Respondent found no evidence or records of such a motion and so informed the Court on March 14, 1979.

granted in *Duren* some 25 days before petitioner filed this action. The Court finds no basis for circumvention of the exhaustion doctrine in this argument.

Second, from information available to the Court, it appears that the Public Defender for the Sixteenth Judicial Circuit, which encompasses the state court in which petitioner was convicted, is willing to provide prompt assistance to prisoners who, like petitioner, have *Duren* claims. This assistance takes the form of submission of motions to recall mandates or motions under Rule 27.26. When this fact is coupled with the expeditious processing of *Duren* claims by the Missouri courts, there is simply no cause to believe that petitioner will suffer prejudice if required to exhaust state remedies.

Since it appears that petitioner's arguments are completely without merit, there is no cause for reconsideration of the Court's order of April 26, 1979. And, because the exhaustion issues in this case are conclusively settled against petitioner under long-established principles of law, the Court finds no ground for issuance of a certificate of probable cause in this case. Petitioner's chances of success on appeal are so small, given the established state of the law, that issuance of a certificate of probable cause is not justified on either his *Duren* claim or on his claim of improper pre-trial identification.

For the reasons stated above, it is

ORDERED that petitioner's motion for reconsideration or, in the alternative, for certificate of probable cause should be and it is hereby denied.